**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ROBERT SANTANA, | : | Civil No. 11-2611 (FSH) |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| DIRECTOR OSCAR AVILES, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

**APPEARANCES:**

> ROBERT SANTANA, #695588, Plaintiff Pro Se
> East Jersey State Prison
> Lock Bag R
> Rahway, NJ 07065

**HOCHBERG**, District Judge:

Plaintiff, Robert Santana, who is currently incarcerated at East Jersey State Prison, seeks to bring this action in forma pauperis pursuant to 28 U.S.C. § 1915, asserting violation of his rights under 42 U.S.C. §1983, arising from his pretrial detention at Hudson County Correctional Center ("HCCC") in Kearny, New Jersey.  This Court will grant Plaintiff's application to proceed in forma pauperis.  See 28 U.S.C. § 1915(b).  Having reviewed Plaintiff's allegations, as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court will dismiss the federal claims raised in the Complaint, without prejudice to the filing of an amended complaint (that is complete on its face), and decline to exercise supplemental jurisdiction over claims arising under state law.

# I.  BACKGROUND

Robert Santana brings this Complaint against Oscar Aviles ( Warden of HCCC),

Corrections Officers Captain Day, Lt. Monteleone, Sgt. Gaines, Sgt. Feldman, C.O. Lisojo, C.O.

Pastrana, C.O. Collymore, Ombudsman Marcy Dressler, and several John/Jane Does, alleging

violation of his constitutional rights under 42 U.S.C. § 1983 and violation of New Jersey law,

while he was incarcerated at HCCC.  Plaintiff asserts the following facts:

> On or about January 1, 2010, the defendants engaged in an unlawful lockdown of the C-5-east tier w/out due process of law and plaintiff was confined to a two man cell designed for one person in excess of 22-hrs a day, 5-days a week, 32-hrs a day 2-days a week, from January 1, 2010 continuously to September 11, 2010, more than 270-days in such confinement such was atypical and severe hardships for plaintiff who was pre-trial detainee. Plaintiff was also deprived of outdoor outside recreation from January 1, 2010 to October 23, 2010.  During the entire period described above plaintiff was never infracted nor did he receive any misbehavior report, nor any hearing held by the defendants before subjecting the plaintiff to this atypical and severe hardship confinement.

> All pretrial detainees held on C-5-East were subjected to the same treatment without due process of law.  Such confinement in one room cell (two persons) of this size 12 x 8 constituted a fundamental denial of decency, privacy, personal security, simply civilized humanity.

> At all times relevant mentioned herein plaintiff was a pretrial detainee not adjudicated guilty of any crime, and such confinement amounted to punishment by the defendant Director Aviles, his captain, Lt. Sergeants, and correctional staff by one acting under color of state law.

> Plaintiff was also denied the right to practice religious freedoms to attend church service.

(Dkt. 1 at 5-6.)

Plaintiff states that he suffered emotional distress, mental anguish and loss of liberty without due process of law.  (Dkt. 1 at 5.)  Plaintiff seeks compensatory and punitive damages for violation of his constitutional rights.  (Dkt. 1 at 8.)

## II.  STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner is seeking redress against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] which was previously applied to determine if a federal complaint stated a claim.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  To survive dismissal under Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Iqbal, 129 S. Ct. at 1949 (citation omitted).  Officials may not be held liable under § 1983 for the

---

[1]  The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

unconstitutional misconduct of their subordinates.  Id. at 1948-49.  Rather, the facts set forth in the complaint must show that each government-official defendant, through the official's own individual actions, has violated the plaintiff's constitutional rights.  Id.  This Court must disregard labels, conclusions, legal arguments, and naked assertions.  Id. at 1949.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief", and will be dismissed.  Id. (citations and internal quotation marks omitted).

The Third Circuit instructs that, to determine the sufficiency of a complaint under the pleading regime established by Iqbal,

> a court must take three steps:  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Iqbal, 129 S. Ct. at 1947.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 1950.  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id.

Santiago v. Warminster Township, 629 F. 3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to relief*.  A complaint has to "show" such an entitlement with its facts") (emphasis supplied).  The Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).

4

### III.  DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983.  See Iqbal, 129 S Ct. at 1947-48.  Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).  This Court construes Plaintiff's Complaint as attempting to assert the following claims:  (A) the conditions of confinement inflicted punishment without due process of law; (B) violation of the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), see 42 U.S.C. § 2000cc-1; and (C) denial of the First Amendment right of access to courts.

A.  Conditions of Confinement

This Court construes Plaintiff's Complaint as attempting to state a conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment under the standard set forth in Bell v. Wolfish, 441 U.S. 520 (1979), i.e., whether the conditions of

5

confinement amounted to punishment prior to an adjudication of guilt.  As the Supreme Court

explained,

> [I]f a particular condition or restriction of pretrial detention is
> reasonably related to a legitimate governmental objective, it does
> not, without more, amount to "punishment."  Conversely, if a
> restriction or condition is not reasonably related to a legitimate
> goal - if it is arbitrary or purposeless - a court permissibly may
> infer that the purpose of the governmental action is punishment
> that may not constitutionally be inflicted upon detainees qua
> detainees.

Bell v. Wolfish, 441 U.S. at 539 (footnote and citation omitted).

The maintenance of security, internal order, and discipline are essential goals which at

times require "limitation or retraction of . . . retained constitutional rights."  Bell, 411 U.S. at

546.  "Restraints that are reasonably related to the institution's interest in maintaining jail

security do not, without more, constitute unconstitutional punishment, even if they are

discomforting and are restrictions that the detainee would not have experienced had he been

released while awaiting trial."  Id. at 540.  "In assessing whether the conditions are reasonably

related to the assigned purposes, [a court] must further inquire as to whether these conditions

cause [inmates] to endure [such] genuine privations and hardship over an extended period of

time, that the adverse conditions become excessive in relation to the purposes assigned to them."

Hubbard v. Taylor, 399 F.3d at 159 (quoting Union County Jail Inmates v. DiBuono, 713 F.2d

984, 992 (3d Cir. 1983)).

The Third Circuit has "distilled the Supreme Court's teachings in Bell into a two-part

test.  We must ask, first, whether any legitimate purposes are served by these conditions, and

second, whether these conditions are rationally related to these purposes."  Hubbard v. Taylor,

6

538 F. 3d 229, 232 (3d Cir. 2008) (citation and internal quotation marks omitted).  Moreover, the

Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's

cruel and unusual punishments standard, contains both an objective component and a subjective

component:

> Unconstitutional punishment typically includes both objective and
> subjective components.  As the Supreme Court explained in
> Wilson v. Seiter, 501 U.S. 294 . . . (1991), the objective component
> requires an inquiry into whether "the deprivation [was] sufficiently
> serious" and the subjective component asks whether "the officials
> act[ed] with a sufficiently culpable state of mind[.]" Id. at 298 . . . .
> The Supreme Court did not abandon this bipartite analysis in Bell,
> but rather allowed for an inference of mens rea where the
> restriction is arbitrary or purposeless, or where the restriction is
> excessive, even if it would accomplish a legitimate governmental
> objective.

Stevenson, 495 F. 3d at 68.

Objectively, under the Due Process Clause, as well as the Eighth Amendment, prison

officials must satisfy inmates' "basic human needs - e.g., food, clothing, shelter, medical care,

and reasonable safety."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  To satisfy the objective

component, an inmate must show that he was subjected to genuine privation and hardship over

an extended period of time.  See Bell, 441 U.S. at 542 (confining pretrial detainees "in such a

manner as to cause them to endure genuine privations and hardship over an extended period of

time might raise serious questions under the Due Process Clause as to whether those conditions

amounted to punishment"); Hutto v. Finney, 437 U.S. 678, 686-87 (1978) ("the length of

confinement cannot be ignored in deciding whether the confinement meets constitutional

standards.  A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and

intolerably cruel for weeks or months").

7

In this Complaint, Plaintiff alleges that his unit was on lockdown for over 270 days and, during this time, he had no access to outdoor recreation and he was confined with another inmate in an 8' by 12' cell for 16 to 22 hours per day.  Plaintiff's allegations, as written, do not satisfy the objective component because they do not show that Plaintiff endured genuine privations and hardship over an extended period of time.  See Hubbard, 538 F. 3d at 235 (holding that triple celling of pretrial detainees and use of floor mattresses did not violate Due Process because the inmates "were not subjected to genuine privations and hardship over an extended period of time"); Foreman v. Lowe, 261 Fed. App'x 401 (3d Cir. 2008) (immigration detainee's confinement in maximum security did not violate due process).  Nor do his allegations satisfy Iqbal's plausibility standard.  Plaintiff complains that the pretrial detainee unit on which he was housed was on lockdown for over 270 days, during which time  detainees had no outdoor recreation.  Although Plaintiff's allegations are consistent with a finding that the lockdown and denial of access to outdoor recreation were arbitrary and purposeless, Plaintiff's allegations are also consistent with restrictions that constitute a rational response by jail officials to an incident or other circumstances warranting a need for heightened security during this period.  As written, Plaintiff's allegations do not satisfy the objective component of a conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment.

Nor do Plaintiff's allegations satisfy the subjective component of a conditions of confinement claim under the Due Process Clause.  First, an individual defendant in a civil rights action must participate in the alleged wrongdoing, and Plaintiff does not assert facts showing how each named individual defendant participated in the alleged wrongdoing, i.e., arbitrarily placing detainees on lockdown and arbitrarily denying outdoor recreation for 270 days.  See

Iqbal, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs").  Second, Plaintiff does not assert facts showing that each named individual defendant was deliberately indifferent to his health or safety.  To establish deliberate indifference, a plaintiff must set forth facts "show[ing] that the official was subjectively aware" of the allegedly substandard conditions.  See Farmer v. Brennan, 511 U.S. 825, 829 (1994).  Moreover, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

Here, Plaintiff makes no allegations whatsoever with respect to the subjective component.  Moreover, as previously stated, Plaintiff's allegations are consistent with the conclusion that jail officials reasonably responded to a security concern.  Because the Complaint makes no factual allegations showing the deliberate indifference of each named defendant, and because vicarious liability does not apply under § 1983, the Complaint fails to satisfy the subjective component of a conditions of confinement claim as to any named individual defendant.

However, it is conceivable that Plaintiff simply neglected to specify facts that could make out a conditions of confinement claim.  This Court will grant him leave to file an amended complaint that is complete on its face stating a conditions of confinement claim under the Due Process Clause and § 1983 against one or more of the defendants named here.

9

B.  Free Exercise of Religion

The Free Exercise Clause of the First Amendment prohibits prison officials from denying an inmate "a reasonable opportunity of pursuing his faith."  See Cruz v. Beto, 405 U.S. 319, 322 & n.2 (1972).  The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), see 42 U.S.C. § 2000cc-1, may be violated when officials impose a "substantial burden on [his] religious exercise."

Plaintiff's Complaint in this case fails to make out a First Amendment free exercise claim because Plaintiff does not allege facts showing that any of the named defendants denied him a reasonable opportunity to pursue his faith.  The facts asserted in a complaint must show that a prisoner's request for religious services is based on his own sincerely held religious belief.  See Sutton v. Rasheed, 323 F. 3d 236, 250 (3d Cir. 2003) (If a prisoner's request is "not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request") (quoting DeHart v. Horn, 227 F. 3d 47, 52 (3d Cir. 2000)).[2]  In this Complaint, Plaintiff asserts merely that he was "denied the right to practice religious freedoms to attend church service."  (Dkt. 1 at 6.)  But he does not assert what his religious beliefs are, or in what way any defendant interfered with his exercise of his religious beliefs.  Nor does Plaintiff allege facts showing that the government imposed a substantial burden on his religious exercise, contrary to RLUIPA.  Plaintiff's allegations are accordingly insufficient to state a Free Exercise claim against any named defendant under the Iqbal pleading standard or a claim under RLUIPA. This Court will dismiss the Free Exercise and the RLUIPA claims for failure to state a claim

---

[2] Secular views are not protected by the Free Exercise Clause, and "[o]nly beliefs which are both sincerely held and religious in nature are protected under the First Amendment."  Sutton, 323 F. 3d at 251 (citation and internal quotation marks omitted).

upon which relief may be granted.  However, this Court will grant Plaintiff leave to file an amended complaint that is complete on its face stating a Free Exercise Clause and/or RLUIPA claim against one or more of the named defendants.[3]

---

[3] Even where religious beliefs are sincerely held, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229 (2001) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1987)).  Although "prisoners do not forfeit all constitutional protections," it is settled that "[t]he fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." Bell, 441 U.S. at 546.  In deciding an inmate's First Amendment challenge, a court must recognize that "judgments regarding prison security 'are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" Turner v. Safley, 482 U.S. 78, 86 (1987) (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974)).  Prison administrators, "who are actually charged with and trained in the running of the particular institution under examination" are the best arbiters of the need for specific prison regulations to maintain institutional safety and promote prisoner rehabilitation.  Bell v. Wolfish, 441 U.S. 520, 562 (1979); see also Pell v. Procunier, 417 U.S. 817, 827 (1974) (courts should ordinarily defer to their expert judgment unless officials exaggerate the legitimacy of the interest behind the regulation).  To guarantee due deference is shown to prison officials, courts examine the constitutionality of prison regulations using a reasonableness standard set forth in Turner v. Safley, 482 U.S. 78, (1987).  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89.  Turner requires courts to weigh four factors in determining reasonableness:  "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are any 'ready alternatives' to the regulation." Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (quoting Turner, 482 U.S. at 89-91); see also Fraise v. Terhune, 283 F.3d 506 (3d Cir. 2002).  Furthermore, "the burden is not on the state to prove the validity of the challenged prison regulation but instead is on the inmate to disprove it." Williams, 343 F.3d at 217 (citing Overton v. Bazzetta, 539 U.S. 126 (2003)).

For example, In O'Lone v. Shabazz, 482 U.S. 342 (1987), Muslim inmates challenged a New Jersey classification regulation which prohibited inmates assigned to outside work details from returning to the prison during the day except in the case of an emergency on Free Exercise grounds because it prevented Muslims assigned to outside work details from attending Juma services on Fridays.  The Supreme Court rejected the Free Exercise claim, deferring to the determination of prison administrators that a rule preventing inmates from returning from outside

(continued...)

C.  Supplemental Jurisdiction

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pennsylvania, 983 F.2d 1277, 1284-1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy,

---

[3](...continued)
work details was rationally related to security and rehabilitative concerns relating to work:

> There are, of course, no alternative means of attending Jumu'ah; respondents' religious beliefs insist that it occur at a particular time.  But the very stringent requirements as to the time at which Jumu'ah may be held may make it extraordinarily difficult for prison officials to assure that every Muslim prisoner is able to attend that service.  While we in no way minimize the central importance of Jumu'ah to respondents, we are unwilling to hold that prison officials are required by the Constitution to sacrifice legitimate penological objectives to that end.

Id. at 351-52; see also Fraise v. Terhune, 383 F.3d 506 (3d Cir. 2002) (rejecting inmates' free exercise challenge to regulation designating Five Percent Nation as a security threat group and directing members' confinement in a security threat group unit); Williams v. Morton, 343 F.3d 212, 218 (3d Cir. 2003) (rejecting prisoners' free exercise claim and finding "that providing vegetarian meals, rather than Halal meals with meat, is rationally related to the legitimate penological interests in simplified food service, security, and staying within the prison's budget").

convenience, and fairness to the litigants.'" Growth Horizons, Inc., 983 F.2d at 1284 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims.  United Mine Workers v. Gibbs, 383 U.S. at 726; Growth Horizons, Inc., 983 F.2d at 1284-1285.  In this case, since this Court is dismissing every claim over which it had original subject matter jurisdiction, this Court declines at this juncture to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## IV.  CONCLUSION

Based on the foregoing, this Court will grant in forma pauperis status, dismiss the federal claims (without prejudice to the filing of an amended complaint that is complete on its face), and decline to exercise supplemental jurisdiction.

s/ Faith S. Hochberg
**FAITH S. HOCHBERG, U.S.D.J.**

Dated:  November 30, 2011

13